IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 5, 2008

## STATE OF TENNESSEE v. TERRELL ANTRON GREER

**Appeal from the Circuit Court for Madison County**
**No. 06-511    Donald H. Allen, Judge**

---

### No. W2007-01192-CCA-R3-CD  - Filed April 2, 2008

---

The Defendant, Terrell Antron Greer, was convicted upon a jury verdict of one count of the sale or delivery of less than .5 grams of cocaine, a Class C felony, and he was sentenced to five years for that conviction.  He was likewise convicted of two counts of the sale or delivery of more than .5 grams of cocaine, Class B felonies, and he was sentenced to eleven years for each of those convictions.  All of his sentences were ordered to be served concurrently in the Department of Correction as a Range I, standard offender.  In this appeal, he asserts that the evidence was not sufficient to support his convictions and that his sentences are excessive.  Following our review of the appellate record, the parties' briefs, and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the Appellant, Terrell Antron Greer.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Jerry Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

#### Factual Background

Following a series of drug purchases made by a confidential informant working in concert with the Jackson Police Department, the Madison County Grand Jury returned a six-count indictment against the Defendant.  He was charged with one count of selling cocaine and one count of delivering

cocaine. These two counts did not specify an amount of cocaine sold or delivered. Further, he was charged with two counts of selling more than .5 grams of cocaine and two counts of delivering more than .5 grams of cocaine. The Defendant elected to be tried by a jury.

At the Defendant's trial, Investigator Wes Stillwell, an officer with the Metro Narcotics Unit of the Jackson Police Department, testified that he orchestrated an "undercover drug buy" on November 2, 2005. The buyer was a confidential informant, and the seller (or "target") was the Defendant.[1] After the confidential informant called Investigator Stillwell and informed that he had arranged to purchase a small amount of crack cocaine from the Defendant, the investigator met the informant at a secure location. There, Investigator Stillwell searched the informant to ensure that he did not have any drugs or money on him that would compromise the integrity of the undercover buy. After the search, Investigator Stillwell provided the informant with money to purchase the crack cocaine and outfitted him with an audio-video recording device.

The confidential informant then went to the Defendant's Madison County residence (where he lived with his mother) and completed the transaction, which lasted "just a few seconds" and took place in the Defendant's front yard. Afterwards, Investigator Stillwell met the confidential informant at a secure location where the confidential informant handed over the purported "rock" of crack cocaine he had purchased. Later testing by the Tennessee Bureau of Investigation confirmed that the "rock" was .3 grams of a rock-like substance containing cocaine.

At approximately 7:25 p.m. on November 8, 2005, Investigator Stillwell again met with the same confidential informant at a secure location to prepare for another undercover buy from the Defendant. The confidential informant was searched, given money to purchase drugs, and outfitted with the audio-video recording device before being dropped off near the Defendant's residence. On that occasion, the confidential informant again transacted with the Defendant at his residence, and through the recording device, Investigator Stillwell could hear the confidential informant and the Defendant using slang terms associated with illegal drug transactions. The confidential informant and the Defendant conversed for approximately two minutes before the confidential informant met again with Investigator Stillwell and handed over the substance purchased from the Defendant, which was purported to be a plastic bag of powder cocaine. Later testing by the Tennessee Bureau of Investigation confirmed that the plastic bag contained powder cocaine that weighed .6 grams.

On November 12, 2005, Investigator Stillwell managed another undercover buy from the Defendant with the same confidential informant, following the same procedures at a secure location before dropping the confidential informant off near the Defendant's residence. On this occasion, the confidential informant—who wore the audio-video recording device—went inside the Defendant's house to make the transaction. Afterwards, as on the previous two occasions, the confidential informant immediately rendezvoused with Investigator Stillwell and handed over the purchase, "a hard powdery substance that [was] white in color." Again, later testing by the Tennessee Bureau of

---

[1] At the time of this transaction, Investigator Stillwell knew the Defendant only by his alias, "Peabody," but at trial, he identified the Defendant as being the same person as Peabody.

Investigation affirmed that the substance was cocaine, and this time it was in "compressed powder" form and weighed 1.2 grams.

Following each of the three undercover buys, Investigator Stillwell retrieved the audio-video recording device from the confidential informant and then downloaded the recorded occurrence from the device's hard drive to his laptop computer before copying the recording to a digital video disc. The recordings of all three undercover buys were ultimately copied to a single disc. In addition, Investigator Stillwell printed out still photographs made from the video recording. Five of these photographs, which were entered into evidence at trial, depicted the Defendant inside his bedroom during the course of the third undercover buy with the confidential informant.

On cross-examination, Investigator Stillwell confirmed that it was dark outside when each of the three undercover buys took place. He further informed that because the audio-video equipment the confidential informant was outfitted with did not have night vision capabilities, the camera required ambient light (such as an overhead light, a streetlight, or car headlights) in order to focus on anything in the dark. The officer also affirmed that, during the second and third undercover buys, he heard more than two voices on the recording.

Also on cross-examination, Investigator Stillwell agreed that, during the third undercover buy, the confidential informant made contact with the Defendant's next-door neighbor for the purpose of evaluating whether the neighbor "was open to the idea" of selling drugs to the confidential informant.[2]

The confidential informant also testified. He identified the Defendant as the man from whom he purchased the cocaine on all three occasions, informing that he had previously lived in the same neighborhood as the Defendant and knew him for approximately three months before engaging in the undercover buys.

On the first occasion, the confidential informant called the Defendant and prearranged the transaction before meeting Investigator Stillwell at the secured location. After being searched, the confidential informant was dropped off near the Defendant's house and then purchased cocaine from the Defendant in his front yard. On the second occasion, the same procedures were followed before the confidential informant was dropped off near the Defendant's home. However, on that occasion, the Defendant was at his sister's nearby house, and the confidential informant had to telephone him before he could purchase the cocaine. On the third occasion, the same series of events occurred before the confidential informant went inside the Defendant's bedroom to make the purchase. At some point during that transaction, the Defendant went to a neighbor's house to borrow a scale to weigh the cocaine. After each purchase, the confidential informant turned the drugs over to Investigator Stillwell.

_____

[2] Investigator Stillwell informed on redirect examination that the confidential informant later made undercover buys from this neighbor, and the neighbor had pled guilty before the Defendant's trial.

Following this testimony, the confidential informant narrated as the video recording of all three transactions was played for the jury. As he narrated, he again confirmed that he was buying the cocaine from the Defendant in each instance. On cross-examination, the confidential informant agreed that, because the first and second transactions were conducted outside at nighttime, the video recording did not clearly depict the Defendant. On redirect examination, the confidential informant clarified that he had no doubts that he had purchased the cocaine from the Defendant on all three occasions.

Additionally, for impeachment purposes, it was revealed through the confidential informant's testimony that he had previously been convicted of incest in the State of Georgia.

The Defendant did not testify or offer any proof.

Following deliberations, the jury found the Defendant guilty on all six counts of the indictment and imposed a $20,000 fine for each offense. The trial court merged his convictions for the sale and delivery of cocaine into a single conviction for the sale of cocaine. See Tenn. Code Ann. § 39-17-417(c)(2)(A) (making the sale of less than .5 grams of cocaine a Class C felony). Similarly, the trial court merged his four remaining convictions into two convictions for the sale of more than .5 grams of cocaine. See Tenn. Code Ann. § 39-17-417(c)(1) (informing that the sale of more than .5 grams of cocaine is a Class B felony).

Subsequently, the trial court imposed a five-year sentence for the Class C felony and eleven-year sentences for each Class B felony, ordering all sentences to be served concurrently as a Range I, standard offender in the Department of Correction.[3] The Defendant's motion for a new trial was denied, and this appeal followed.

## ANALYSIS

### I.     Sufficiency of the evidence

On appeal, the Defendant argues that the evidence was insufficient to support his convictions. Specifically, he avers that the State failed to prove beyond a reasonable doubt that it was, in fact, the Defendant who sold cocaine to the confidential informant because the video recordings of the transactions were "very dark, and it was not at all clear that the [Defendant] was the person who sold cocaine to the [confidential informant]."

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn.

---

[3] The evidence presented at the Defendant's sentencing hearing is discussed hereinafter.

2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

The evidence relevant to our analysis on this issue can be summarized as follows. Investigator Stillwell's testimony established that the substances purchased by the confidential informant during all three undercover buys were cocaine or substances containing cocaine. Moreover, the investigator's testimony established that the cocaine purchased by the confidential informant during the second and third undercover buys weighed more than .5 grams. Further, notwithstanding any visual shortcomings of the video recording of the transactions, the confidential informant clearly identified the Defendant as the individual who sold him the cocaine. Viewed in a light most favorable to the prosecution, this evidence is sufficient to support the Defendant's convictions. See Tenn. Code Ann. § 39-17-417(c)(1)-(2).

By finding the Defendant guilty, the jury accredited the confidential informant's testimony identifying the Defendant as the seller, and this Court will not reevaluate that finding on appeal. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. This issue lacks merit.

## II.    Sentencing

The Defendant also asserts that the sentences imposed by the trial court are excessive because the trial court over-emphasized enhancement factors and did not afford the mitigating factors enough weight. The State counters that the Defendant's sentences are appropriate because the trial court set terms within the applicable sentencing ranges and did not abuse its discretion in so doing.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties

on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

At the twenty-two-year-old Defendant's March 12, 2007 sentencing hearing, the only evidence proffered by the State was the Defendant's presentence report. The report reflected that the Defendant had been previously convicted of possession of less than one-half ounce of marijuana and unlawful possession of a weapon, as well as four traffic offenses and a violation of the Tennessee financial responsibility law. All of his previous convictions were for misdemeanor offenses.

The Defendant testified at the sentencing hearing that, the day after he was released on bond (before his trial) for the instant offenses, he secured a job at a Kentucky Fried Chicken restaurant and maintained employment there until he was convicted and reincarcerated. He also informed that he had successfully graduated from high school and denied having any addiction problems.

Three additional witnesses testified on the Defendant's behalf. His mother, Thelma Louise Greer, testified that the Defendant was the youngest of her five children and that she would do whatever was necessary to help him successfully complete a probationary term. The Defendant's girlfriend, Shantwania Chaney, testified that the Defendant served as a father figure to her five-year-

old daughter and had provided support to her. Ms. Chaney opined that the Defendant could successfully complete a probationary sentence, and she stated that she would help him do so. His supervisor from the Kentucky Fried Chicken restaurant, Shalonda Chaney, testified that the Defendant was a reliable employee and stated that he could return to work if granted probation.

At the close of the hearing, the trial court noted that it considered a number of factors in determining the Defendant's sentence. Specifically, the trial court stated that it had considered the evidence presented at trial, the evidence presented at the sentencing hearing (including the Defendant's testimony), the presentence report, the principles of sentencing, the nature and characteristics of the criminal conduct involved, the arguments of counsel, the Defendant's amenability to rehabilitation, as well as advisory enhancement and mitigating factors set out by statute.

Regarding statutory enhancement factors, the trial court specifically found that the Defendant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range of punishment. See Tenn. Code Ann. § 40-35-114(1). The court also concluded that the Defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(8). In concluding that these factors were applicable, the trial court explained that the Defendant's presentence report reflected that judgment for the Defendant's convictions for possession of marijuana and unlawful possession of a weapon was entered on August 9, 2005. For those two convictions, the Defendant was sentenced to eleven months and twenty-nine days in the county jail, but the sentences were suspended and the Defendant placed on probation for the duration. Accordingly, the trial court discerned that the Defendant's instant offenses (which occurred in November 2005) were committed while he was on probation for a previous, drug-related offense. The trial court highlighted the fact that only three months of the Defendant's probationary period had passed before he was arrested for the instant offenses.

The trial court explained that it did not afford the Defendant's prior convictions for traffic offenses a lot of weight but stated the following about the Defendant's prior drug and weapons convictions:

> [B]ut I do give great weight to this conviction for possession of marijuana and also for this conviction for possession of a weapon. I give both of those considerable weight especially in light of the fact that he was placed on probation and apparently committed those new felony offenses while on probation. So I gave both of those factors great weight.

Regarding factors in mitigation, the trial court concluded that the Defendant's criminal conduct neither caused nor threatened serious bodily injury, that the Defendant was a relatively "young man" at twenty-two years of age, and that he was a high school graduate. See Tenn. Code Ann. § 40-35-113(1)(6), (13). However, the court only afforded these factors "slight weight." The

-7-

trial court additionally noted that the Defendant had support from his family, girlfriend, and employer.

After setting out this framework, the trial court imposed the concurrent sentences challenged by the Defendant. On appeal, the Defendant apparently argues that the trial court gave excessive weight to the enhancement factors and gave insufficient weight to the mitigating factors. However, as explained below, we conclude that the enhancing factors considered by the trial court support the sentences imposed by the trial court.

We note that in response to <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), our legislature enacted amendments to our sentencing laws. These amendments became effective on June 7, 2005 and apply to defendants who committed a criminal offense on or after that date. <u>See</u> 2005 Tenn. Pub. Acts ch. 353, § 18. Prior to the enactment of these amendments, our sentencing law had provided that one of the grounds upon which a defendant could appeal his sentence was that the enhancement and mitigating factors were not weighed properly. <u>See</u> Tenn. Code Ann. § 40-35-401(b)(2)(2003). The 2005 amendment removed this ground for appeal. <u>See</u> Tenn. Code Ann. § 40-35-401(b)(2006). Our legislature has also provided that although the sentencing court shall consider the statutory enhancement factors, the enhancement factors are advisory only and the trial court is not bound by them. Tenn. Code Ann. § 40-35-114.

The new sentencing law also provides that, in determining the specific sentence within the appropriate range of punishment, the sentencing court shall consider additional advisory sentencing guidelines, but again, is not bound by them: (1) the minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classification; and (2) the sentence within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114. Tenn. Code Ann. § 40-35-210(c)(2006).

In the present case, the sentences imposed by the trial court fell within appropriate ranges set by statute. A Range I, standard offender[4] convicted of a Class C felony must be sentenced to "not less than three (3) nor more than six (6) years." Tenn. Code Ann. § 40-35-112(a)(3). Thus, the five-year sentence imposed by the trial court for the Defendant's conviction for the sale of cocaine, a Class C felony, was not outside the appropriate range. <u>See</u> Tenn. Code Ann. § 39-17-417(c)(2)(A). Range I, standard offenders convicted of Class B felonies are subject to a sentence of "not less than eight (8) nor more than twelve (12) years." Tenn. Code Ann. § 40-35-112(a)(2). Consequently, the Defendant's eleven-year sentences for each conviction of selling more than .5 grams of cocaine were likewise within the permissible range. <u>See</u> Tenn. Code Ann. § 39-17-417(c)(1) (making the sale of more than .5 grams of cocaine a Class B felony).

---

[4] The Defendant's offender status is not disputed.

Accordingly, because the record reflects that the trial court considered the appropriate principles and considerations set out by our sentencing statutes before imposing lawful sentences, the presumption of correctness regarding the trial court's sentencing determinations applies in this case. See Tenn. Code Ann. § 40-35-401(d); Fletcher, 805 S.W. 2d at 789. The record reflects that the trial court enhanced the Defendant's sentences based on the court's application of two enhancement factors. Based upon our review of the record, application of these enhancement factors was proper. Furthermore, we cannot conclude that the sentences imposed are excessive or inconsistent with the purposes of our sentencing laws. See Tenn. Code Ann. § 40-35-401(b)(2), (3). This issue lacks merit.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
DAVID H. WELLES, JUDGE